INHABITANTS OF ETNA *vs.* INHABITANTS OF BREWER.

Penobscot. Opinion September 28, 1886.

*Pauper settlement. Commitment to Insane Hospital. Evidence. Residence. Home.*

Where the settlement of a pauper is in dispute, and a prior settlement is admitted to have been in the defendant town, the burden is upon the defendant to show that the pauper has gained a settlement elsewhere by a residence of five successive years without receiving supplies, directly or indirectly, as a pauper.

In a suit by one town against another to recover the expenses of examination, commitment and support of an insane person in the insane hospital, where it appears that the municipal officers had the evidence and certificate of the two examining physicians before them upon which to base their proceedings of commitment, and the certificate of commitment and of the physicians is introduced and received in evidence without objection, the verdict will not be set aside on the ground that the evidence fails to show that the municipal officers kept a record of their doings as required by R. S., c. 143, § 13.

The question of residence is in part one of intention.

Declarations accompanying the act of leaving a town where a person's residence is, expressing the object and purpose of making a home in another town, or of performing acts indicating a change of residence from that town, are admissible in evidence on the question of intention.

They accompany an act, the nature, object or motive of which is a proper subject of inquiry, and as such, are a part of the *res gestae*.

No one can become a member of another person's family, so as thereby to gain a home within the meaning of the law relating to the settlement of paupers, unless voluntarily there, and with the consent of the one having control thereof.

ON exceptions and motion to set aside the verdict.

The case is stated in the opinion.

*John Varney*, for the plaintiffs, cited: R. S., c. 143, § 34; 1 Whart. Ev. 265, 266.

*Jasper Hutchings*, for the defendants.

It can make no difference in principle whether the severance of the marital relation had continued one day or ten years. See the cases cited in *Lewiston* v. *Harrison*, 69 Maine, 507.

In favor of personal liberty and to guard against sane persons being imprisoned on a charge of insanity, all the requirements of the statute, expressed or implied, should be fully and strictly complied with. R. S., c. 143, § § 13 & 34; *Naples* v. *Raymond*, 72 Maine, 213.

FOSTER, J. The plaintiff was the prevailing party in an action brought to recover for the expense of examination and commitment to the insane hospital, and for support there furnished to one Martin V. B. Hutchings, and for pauper supplies furnished his wife, Melinda, whose settlement was alleged to be in the defendant town. The case is before the court upon motion and exceptions, and from a careful examination we are satisfied that neither can be sustained.

It was admitted that the pauper at one time had a settlement in the defendant town earlier than that which the defendants claimed he had acquired in the plaintiff town. But the ground taken in defence was that he had moved into the plaintiff town some time in the fall of 1874, and acquired a settlement therein by a residence of five successive years without receiving supplies directly or indirectly as a pauper. This proposition was upon the defendants to sustain by proof, a prior settlement of the pauper in the defendant town having been admitted. The evidence was more or less circumstantial and somewhat conflicting, and the jury, by their verdict, as well as in their special findings, have found that the pauper did not acquire a settlement in the plaintiff town by a residence of five years therein after 1874. The evidence does not so strongly preponderate in favor of the defence as to warrant the court in setting aside the verdict.

But the defendants' counsel claims that there is no proof that the record of the doings of the municipal officers in making the commitment, as called for by R. S., c. 143, § 13, was ever made by them, and that the failure to observe the directions of the

statute in this respect should preclude the plaintiffs from recovering of the defendants the sums which they have paid for the examination, commitment and support of said Hutchings. This objection does not appear to have been raised at the trial. The case shows that the certificate of commitment and of the two examining physicians, as well as attested copies of the same, together with other facts, were introduced and received in evidence at the trial without objection. Had objection been raised at that time to the manner of proof relating to the proceedings of the municipal officers in the premises, possibly the plaintiffs might have been able to substitute that which the defendants now claim was the proper evidence for what was in fact received without objection. The defendants are not in a situation to take advantage of what was tacitly waived at an earlier stage of the case. *Bowdoinham* v. *Phippsburg*, 63 Maine, 497. Taking the facts to be true as disclosed by the evidence before us, there is no such irregularity in the proceedings as in the case of *Naples* v. *Raymond*, 72 Maine, 217. In that case the proceedings were in fact defective, inasmuch as the selectmen never had the evidence and certificate of the physicians before them upon which to base their proceedings of commitment. It is otherwise in the case under consideration.

Exception is taken to the admission of the declarations of the purpose of the pauper, while in the plaintiff town, of buying land in the town of Stetson, when setting out to go to the town of Carmel.

The plaintiffs' claim was that the pauper's residence in the plaintiff town ceased at the time he sold his farm in 1879 and went to Stetson; on the other hand it was claimed by the defence that his home continued in the plaintiff town after that time, and this was in issue before the jury. The continuation or cessation of residence in the plaintiff town was in part a question of intention. It seems that the pauper was then occupying a house in Stetson belonging to one Wing, and came over to witness' house in the plaintiff town and borrowed his horse for the purpose of going to see a man by the name of Shaw, in Carmel, who owned the piece of land lying in Stetson

which the pauper was desirous of purchasing. His expressed purpose in going to Carmel was to see about the purchase of this piece of land in Stetson, the town in which he was then living. The owner of the land lived in Carmel, and it became necessary for him to go there in order to make the purchase. The house in which he was living he could buy, as he states, but the land he could not till he saw the owner. Had the owner of the land been living in Stetson at the time, and the pauper's declarations related to a visit to him there for the purpose of purchasing the land, then their admissibility would not be questioned. The principle on which those declarations are received in evidence is the same, whether the pauper was about leaving the plaintiff town, at the time the declarations were made, to go to Carmel or to Stetson, his expressed object and purpose being the purchase of a parcel of land lying in the latter town. The issue was whether the pauper's home had ceased to exist in the plaintiff town. The question being one in part of intention, how could that intention be shown better than by his declarations communicated at the time? Such declarations are a part of the *res gestæ*. They accompany an act, the nature, object or motive of which is a proper subject of inquiry. They are verbal acts, and as such are legal evidence of his intention. *Gorham* v. *Canton*, 5 Maine, 266.

The other exception relates to a question upon cross examination as to whether the pauper had any more right to come to the house of the witness in the years 1880 and 1881 than he had in 1872 and 1873, when in Brewer.

It was not insisted at the trial, nor do the defendants now claim in argument, that the pauper had any home or right to a home at the house of the witness in 1872 or 1873. As no one can become a member of another person's family, so as thereby to gain a home within the meaning of the pauper laws, unless voluntarily there, and by the consent of the one having control, the question may be regarded as admissible. It was upon cross examination, and may well be understood as interrogating the witness relative to any right or permission given by him to the

pauper to make a home in his family during the years named.

*Motion and exceptions overruled.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.